**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
----------------------------------------------------------------x

**UNITED STATES OF AMERICA**           :

        **v.**                                :         **S3 03 Cr. 1188 (RMB)**

**DIEGO FERNANDO MURILLO-BEJARANO,**  :

        **Defendant.**           :
----------------------------------------------------------------x

### DEFENDANT'S SUPPLEMENTAL SENTENCING MEMORANDUM

This memorandum is respectfully submitted in response to the Government's Sentencing Memorandum, dated February 9, 2009 (hereinafter referred to as "Government Memo"), in order to aid in the determination of the appropriate sentence which serves the interests of justice and the sentencing purposes set forth in Title 18 U.S.C. §3553(a) in accord with *United States v. Booker*, and *United States v. Fanfan*, 543 U.S. 220, 160 L.Ed.2d 621, 125 S. Ct. 738 (U.S. Sup. Ct. 2005).

Mr. Murillo-Bejarano's Role Within the AUC

The Government argues that Mr. Murillo-Bejarano should be sentenced to 405 months' imprisonment, the top of the advisory United States Sentencing Guidelines range. As outlined extensively in the defendant's sentencing memorandum, Mr. Murillo-Bejarano was *a* leader of the AUC, holding the title of Inspector General. Fidel and Carlos Castano founded the AUC. In 1994, Fidel was killed and Carlos assumed leadership of the Organization until he was killed in 2004, at which time his brother Vicente became leader. In addition to his role as Inspector General, the defendant was the commander of three Bloques within the AUC: Heroes de Tolova, Heroes de Granada, and Cacique Nutribara. The defendant and all the commanders of the AUC used money obtained from narcotics trafficking to finance their military and political operations. A "tax" on a percentage of cocaine moved through their Bloques was paid to the Bloque commander.

The defendant was responsible for collecting taxes on cocaine in the Bloques that he controlled; but he was not in charge of all narcotics trafficking activities, including all cocaine transportation and financial operations for the AUC. Each Bloque commander was responsible for his individual Bloque. A percentage of all monies that Murillo-Bejarano collected from the taxes on cocaine within the Bloques under his command, was forwarded to the Castano brothers to run the AUC. The taxes on the cocaine were used as a revenue stream to fund the military and political objectives of the AUC. Accordingly, the defendant respectfully submits that a sentence at the highest end of the sentencing Guidelines range is not warranted, pursuant to the factors contained in Title 18

U.S.C. § 3553(a).  Notably, Mr. Murillo-Bejarano's Plea Agreement, which was negotiated by prior counsel, already includes a four-level enhancement, pursuant to U.S.S.G. § 3B1.1(a), for an organizer or leadership role in criminal activity that involved five or more participants or was otherwise extensive.  Showing extraordinary acceptance of responsibility, one of the Bloques that Murillo-Bejarano was in charge of, the Cacique Nutribara Bloque, was the first Bloque to voluntarily demobilize as part of the Justice and Peace Process, on November 25, 2003.  Murillo-Bejarano also voluntarily surrendered approximately 2,500 to 3,000 arms to the Colombian authorities used by the AUC and he has given tremendous support and financing to the Justice and Peace Process He has continued his involvement in the peace process and continues to turn over properties to the process even though he has been extradited to the United  States.

Mr. Murillo-Bejarano's Incarceration in Colombia Merits a Reduction in Sentence

The conditions of Mr. Murillo-Bejarano's confinement warrant a sentence at the low end of the advisory Guidelines range.  Mr. Murillo-Bejarano stands by his factual assertions regarding the deplorable prison conditions that he experienced while confined at Combita, Itagui, and La Picota prisons in Colombia.  Attached hereto as Exhibit "1," is a sworn affidavit from Mr. Murillo-Bejarano, which outlines the conditions that he experienced while imprisoned in Colombia for approximately three (3) years prior to his extradition.[1]   While the Government proffers information in the form of unsworn statements from Special Agent Caesar Medina of the United States Drug Enforcement Administration, regarding the prison conditions at Combita, the defendant respectfully submits that while Agent Medina may have visited Combita on 5 to 6 occasions, between 2004 and 2007, during the time that he was stationed at the DEA's Bogotá Country Office, Agent Medina did not spend extensive amounts of time behind the walls of Combita, and he certainly did not experience what it was like to be housed as an inmate. As outlined in the defendant's sentencing memorandum, a 2006 report on human rights practices by the United States Department of State, indicates that most of Colombia's prisons are plagued by "overcrowding, insecurity, corruption, and an insufficient budget," and that at Combita Prison in particular, "lack of money to pay sanitation fees led to water rationing."  Bureau of Democracy, Human Rights and Labor (hereinafter referred to as "BDHRL"), U.S. Dep't of State, Colombia Country Reports on Human Rights Practices-2006 (2007), http://www.state.gov/g/drl/rls/hrrpt/2006/78885.htm (last visited January 20, 2009).  Moreover, the BDHRL cites to a report by the Inspector General's Office on Combita Prison, which found "violations of health standards, such as lack of potable water and a proliferation of insects and rodents," and described frequent outbreaks of deadly violence and rioting throughout the Colombian prison system.

---

[1]  After reviewing the facts again with Mr. Murillo-Bejarano in order to prepare the defendant's affidavit and consulting with the defendant's counsel in Colombia,  counsel learned that the dates that Mr. Murillo-Bejarano was housed at the Colombian prisons of Combita, Itagui and La Picota, are slightly different than those outlined in the defendant's original sentencing submission.  The actual dates of the defendant's incarceration are contained in the attached affidavit of Mr. Murillo-Bejarano.

In *United States v. Carty*, 264 F.3d 191, 196 (2d Cir. 2001), the Second Circuit clearly recognized that "pre-sentence confinement conditions may in appropriate cases be a permissible basis for downward departure." Several Southern District Court judges including the Honorable Robert P. Patterson, Jr., and the Honorable Lawrence M. McKenna, have granted departures based upon substandard pre-sentence confinement conditions. See *United States v. Francis*, 129 F. Supp. 612 (S.D.N.Y. 2001); *United States v. Torres,* 2005 WL 2087818, 01 Cr. 1078 (LMM) S.D.N.Y. Aug. 30, 2005). While the Government argues that upon remand in Carty, Judge Schwartz rejected Carty's motion for a downward departure based upon substandard prison conditions in the Dominican Republic, notably, *Carty* was decided prior to the Supreme Court's decision in *United States v. Booker*, 543 U.S. 220 (2005), at a time when the Sentencing Guidelines were still mandatory, rather than advisory. Moreover, in looking at the totality of the circumstances, the District Court in *Carty* considered the fact that Carty fled to and remained in the Dominican Republic in order to avoid his sentencing in the United States. *Carty*, 264 F.3d at 195. Here, Mr. Murillo-Bejarano voluntarily surrendered to the substandard conditions of the Colombian prison system for three (3) years prior to his extradition to the United States. Accordingly, the conditions of Mr. Murillo-Bejarano's pre-sentence confinement in Colombia are a proper factor for the Court to consider in determining the appropriate sentence for the defendant. The defendant's account of the harsh conditions he experienced while incarcerated in Colombia, taken together with the United States Department of State report on human rights in Colombia, provide sufficient grounds for a sentence at the low end of the advisory guideline range pursuant to Title 18 U.S.C. § 3553(a). [2] The government also opposes defendant's request that his sentence be reduced in order to credit him for the three years he served in Colombia pending extradition and correctly states that only the Bureau of Prisons ("BOP") is entitled to give credit for time served prior to the commencement of a sentence. Having just received additional documentation from the defendant's Colombian attorneys, counsel agrees that any computation of credit should be done by the BOP because it appears that some time may be credited to domestic charges in Colombia.

The Appropriate Sentence for Mr. Murillo-Bejarano

Mr. Murillo-Bejarano has clearly shown remorse and rehabilitation. He immediately accepted responsibility for his crimes by entering a guilty plea approximately three (3) weeks after being extradited to the United States. Thus, the facts of Mr. Murillo-Bejarano's case and his personal history are clearly distinguishable from those cases that the Government cites to as reference for lengthy sentences that international cocaine traffickers have received. (Government Memo p. 23) See *United States v. Alberto Orlandez-Gamboa*, 99 Cr. 654 (TPG) (S.D.N.Y. 2005) (where numerous pre-trial motions were filed prior to the defendant's plea and sentence was imposed prior to the Supreme Court's decision in *United States v. Booker*, 543 U.S. 220 (2005), which rendered the Sentencing Guidelines advisory); *United States v. Ramiro Lopez-Imitola*, 03 Cr. 294 (RPP) (where extensive pre-trial motions were filed, the case was prepared for trial prior to the plea, and a *Fatico* Hearing was held); *United States v. Jorge Manuel*

---

[2] Counsel is unable to request a downward departure because of the parameters of the Plea Agreement.

*Torres Teyer*, 01 Cr. 021 (GEL) (S.D.N.Y. 2006) (where a *Fatico* Hearing was held and sentence was imposed prior to *United States v. Booker*); *United States v. Jorge Asprilla*, 99 Cr. 0101 (TPG) (S.D.N.Y. 2007) (where a *Fatico* Hearing was held and sentence was imposed prior to the Supreme Court's landmark decisions in *Gall v. United States*, 128 S. Ct. 586 (Dec. 10, 2007) and *Kimbrough* v. *United States*, 128 S.Ct. 558 (Dec. 10, 2007)).

Additionally, the Government's assertion that Mr. Murillo-Bejarano "has presented no evidence suggesting that he would have voluntarily terminated his drug-trafficking activities were it not for his extradition to the United States," is contradicted by the actions that the defendant has taken in recent years. (Government Memo p. 21) Mr. Murillo-Bejarano voluntarily surrendered himself to Colombian Authorities on May 27, 2005, as part of the Justice and Peace Process. Not only did the defendant demobilize all three of the Bloques that he commanded and voluntarily surrender approximately 3,000 weapons held by AUC members within those Bloques, he also funded and had AUC members take part in cocaine crop eradication efforts in Bloque Heroes de Tolova, which contained plantations used to grow cocaine. Between 2005 and 2006, Mr. Murillo-Bejarano contributed financing and tools towards these eradication projects. Moreover, as outlined in the PSR and the defendant's sentencing memorandum, Mr. Murillo-Bejarano has voluntarily surrendered approximately $12 million dollars in property (in 47 different locations) as part of the Justice and Peace Process. The surrender of these properties demonstrates an extraordinary acceptance of responsibility by Mr. Murillo-Bejarano. Notably, once the defendant has finished serving the sentence imposed by the Court, the defendant, according to statements made by President Uribe, will be returned to Colombia to serve a sentence as part of the Justice and Peace process. If he continues to cooperate with that process, the sentence could be as low as 8 years; if he does not continue to cooperate, a maximum of 60 years may be imposed.

The history and characteristics of Mr. Murillo-Bejarano justify a sentence at lowest end of the stipulated Guidelines range. The defendant's involvement with the AUC and the defense groups in Colombia stemmed from his horrific experiences early in life with the guerillas. In his eyes, these groups were the only way to fight back against the guerillas' violent tactics and Communist agenda. One of the primary ways to finance the operations against the guerillas, was money received in the form of taxes from narcotics. Moreover, as outlined in the defendant's sentencing memorandum, in the past few years the defendant has been involved in several large scale community projects including financing a water reservoir project and other agricultural projects some of which were a joint effort with the Office of the High Commissioner for Peace in Colombia. Mr. Murillo-Bejarano has no prior criminal convictions in the United States.

Accordingly, in consideration of the relevant factors set forth in Title 18 U.S.C. § 3553(a), Mr. Murillo-Bejarano respectfully requests that the Court impose a sentence of 324 months' (27 years) imprisonment. This sentence is sufficient but not greater than necessary to meet the factors set forth in Title 18 U.S.C. § 3553(a). Notably, a sentence of 324 months' (27 years) will offer significant general deterrence, and the deterrent effect on other individuals in Colombia who are contemplating involvement with narcotics will be no less than the deterrence provided by a sentence of 405 months.

4

Either sentence represents an enormous amount of prison time to be served.  Therefore, the deterrent factor is strongly conveyed by a sentence of 27 years that can result with any involvement with narcotics importation and distribution.  Moreover, Mr. Murillo-Bejarano, a 48-year-old man in poor health, will in all likelihood not live long enough to be released from prison.  Thus, even a sentence of 324 months' imprisonment, at the lowest end of the Guidelines, is presumably a death sentence for Mr. Murillo-Bejarano.

The defendant, Diego Fernando Murillo-Bejarano, respectfully reserves the right to raise additional issues at the time of sentencing. Your Honor's attention to and consideration of this submission are greatly appreciated.

Respectfully submitted,

_/s_____
Margaret M. Shalley
Fasulo, Shalley & Dimaggio, LLP
225 Broadway, Suite 715
New York, New York 10007
Tel. (212) 566-6212
Fax (212) 566-8165

cc:     AUSA Eric Snyder
        AUSA Anjan Sahni
        USPO Christopher T. Ferrall